Henry W. Berry and Lillian R. Berry v. Commissioner.
Berry v. Commissioner
Docket No. 2495-67.
United States Tax Court
T.C. Memo 1969-162; 1969 Tax Ct. Memo LEXIS 134; 28 T.C.M. (CCH) 802; T.C.M. (RIA) 69162; August 12, 1969, Filed Henry W. Berry, pro se., 87 Virginia St., Tappan, N. Y. Robert M. Pearl, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' income tax for 1964 in the amount of $1,799.67. The following *135 questions are presented for decision: (1) Whether petitioners sustained a deductible casualty loss under section 165 [1] by reason of the sinking of the foundation of their home, and if so, in what amount. (2) Whether petitioners contributed more than one-half of the support of petitioner Henry W. Berry's mother in 1964 and are thus entitled to an exemption deduction for her under section 152. (3) Whether petitioners substantiated their claimed deduction for charitable contributions in 1964. Findings of Fact Petitioners Henry W. and Lillian R. Berry, husband and wife, were legal residents of Tappan, New York, at the time their petition was filed. They filed their 1964 joint Federal income tax return with the district director of internal revenue, Manhattan, New York. 803 In 1960 petitioners purchased a house located at 87 Virginia Street, Tappan, New York, for $19,700. They first occupied the house as their residence in the summer of the following year. Approximately one and one-half years later they noticed cracks in the foundation and walls of their home. Petitioners called the cracks *136 to the attention of the builder, who informed them that only a normal settling of the foundation had occurred and would soon stop. As the condition of the house continued to deteriorate, petitioners retained an engineer in May 1965 to advise them on the problem. The engineer expressed the opinion that the cracks were the result of an abnormal amount of settling of the foundation under the front right or northeast corner of the house. A test boring disclosed that that corner had been built over a natural drainage ditch which had, over a period of years, deposited strata of fine sands, clays, loams, and organic materials not suitable for supporting a heavy load. The portion of the foundation constructed over the unsuitable land sank a total of 8 1/2 inches over a period of at least three years, and did not stop sinking until it was repaired in 1965 and 1966. The sinking caused the house to twist and tilt, resulting in substantial interior damage. In the latter part of 1965, petitioners brought a suit for damages against the builder. This suit was not concluded since the builder entered bankruptcy shortly thereafter. Petitioners did not file a claim in the bankruptcy proceedings and *137 have recovered nothing. Petitioners ultimately corrected the defect by digging a drainage ditch half way around the house, filling the ditch with gravel, and connecting it with a storm sewer to carry away water which tended to accumulate in the old, silt-filled drainage ditch. Petitioners then built four concrete piers, two outside and two under the house, placed steel beams across the piers, and jacked up the house, allowing the foundation to rest on the beams. In addition, much interior renovation was done, including the replacement of some of the wall board and flooring, as well as other work. Petitioner incurred total out-of-pocket expenses of $3,509.60 to repair the damage caused by the settling of the foundation. At the time the foundation cracks were discovered similar houses in the neighborhood were selling for $21,500. After the foundation cracks and settling had occurred, and before the damage was repaired, petitioners' house had a fair market value of about $10,750. Petitioners paid $800 toward the support of Henry's mother in 1964. His sister and brother-in-law contributed $700 toward her support. Excluding the rental value of her own home (approximately $1,500 per *138 year), her living expenses in that year totaled $2,884.80. She had social security and interest income in the amount of $1,384.80. Petitioners made charitable and religious contributions in the amount of $272 in 1964. Ultimate Findings of Fact The sinking of the foundation of petitioners' residence was attributable to faulty construction and not to a sudden, unexpected, or unusual cause. Petitioners did not contribute more than one-half of the support of Henry's mother in 1964. Petitioners made contributions of $272 to exclusively charitable and religious organizations in 1964. Opinion Section 165(a) allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise," but paragraph (3) of subsection (c) limits the deduction of an individual's losses of property not connected with a trade or business to situations where the "losses arise from fire, storm, shipwreck, or other casualty * * *." The crucial issue is whether the damage to petitioners' house resulting from the sinking of the foundation was an "other casualty." The term "other casualty" is obviously intended to refer to an event, causing a loss, analogous to *139 a "fire," "storm," or "ship-wreck," e.g., "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." (C.A. 2, 1941), affirming , (1940); (C.A. 2, 1931), affirming ; , affd. (C.A. 9, 1965). As we view the evidence, the damage to petitioners' house was not attributable to such an event but to a gradual sinking of the foundation over a three-year period as a natural, inevitable 804 consequence of a construction error - the laying of a portion of the foundation over the old drainage ditch filled with soil that would not bear the weight of the house. We recognize that this is a personal misfortune that has been suffered by petitioners. However, while the cost of correcting the defect may be includable in their basis of the house, it is not deductible under section 165(c)(3). Petitioners' reliance upon , *140 is misplaced. There the damage to the taxpayer's property, held to be a casualty loss within the meaning of a predecessor of section 165(c)(3), was attributable to an "underground disturbance," which resulted in the "sudden subsidence" of the surface portion of the land on which the house was built. In contrast, the progressive sinking of petitioners' house was an inevitable consequence of locating the house at the particular site without taking measures to prevent the damage which ensued. Furthermore, the gradualness of the sinking in the present case distinguishes it both from Grant and from the situation in , where an earthslide which caused the damage was a sudden event. As to petitioners' claim to a dependency deduction under section 152, [2] the evidence is unmistakably clear that they did not furnish more than half of the support of Henry's mother in 1964. Indeed, the $1,384.80 from social security benefits and interest, plus the value of the housing which she furnished, exceeded substantially the combined sums furnished by petitioners and Henry's sister and brother-in-law. *141 Respondent argues that petitioners' claim to a deduction for charitable contributions must fail because they introduced no documentary evidence to support their claim. However, we found Henry's testimony throughout the trial to be candid and forthright, whether or not his testimony on a particular point was contrary to his selfinterest. We are satisfied that petitioners contributed at least $272 to their church and other religious and charitable organizations in 1964. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer): * * * (4) The father or mother of the taxpayer, or an ancestor of either, * * *↩